**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| Christian Alvarado and Kevin S. Jenner, *individually and on behalf of a collective/class of similarly situated individuals,*<br><br>Plaintiffs,<br><br>vs.<br><br>Wakefern Food Corp., ShopRite Supermarkets, Inc., and Saker ShopRites, Inc.,<br><br>Defendants. | **COLLECTIVE AND CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED<br><br>No. |

Plaintiffs Christian Alvarado, residing at 16 Coldevin Rd., Clark, NJ 07066, and Kevin S. Jenner, residing at 1700 Route 37 West Bldg. 107 Apt. 10, Toms River, NJ 08757, individually and on behalf of themselves and all others similarly situated, by and through counsel, bring this action against Defendants Wakefern Food Corp., maintaining its principal place of business at 5000 Riverside Drive, Keasbey, New Jersey, 08832; ShopRite Supermarkets, Inc., maintaining its principal place of business at 176 N. Main Street, Florida, New York 10921; and Saker ShopRites, Inc., maintaining its principal place of business at 922 Highway 33, Building 6, Suite 1, Freehold, New Jersey 07728, and upon personal knowledge as to themselves and upon information and belief as to other matters, allege as follows:

## INTRODUCTION

1. This action seeks to recover unpaid compensation and overtime compensation, as well as liquidated damages, penalties, interest, reasonable attorneys' fees, costs, declaratory and injunctive relief, and any other appropriate relief, under the Fair Labor Standards Act ("FLSA"), on behalf of Plaintiff Alvarado and similarly situated current and former employees of Defendants

who elect to opt into this action pursuant to 29 U.S.C. § 216(b) (the "FLSA Collective," as hereinafter more fully defined).

2. This action also seeks to recover unpaid straight-time and overtime compensation, liquidated damages, interest, reasonable attorneys' fees, costs, and any other appropriate relief under the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a1, *et seq.* ("NJWHL"), and its implementing regulations, N.J.A.C. 12:56-1.1, *et seq.*, and the New Jersey Wage Payment Law, N.J.S.A. 34:11-4.1, *et seq.* ("NJWPL"), as amended by the New Jersey Wage Theft Act of 2019 (collectively, "New Jersey Labor Law"), on behalf of Plaintiff Alvarado and similarly situated current and former New Jersey employees of Defendant Wakefern Food Corp. ("Wakefern"), and ShopRite Supermarkets, Inc. ("SRS") (the "SRS Class," as hereinafter more fully defined), and on behalf of Plaintiff Jenner and similarly situated current and former New Jersey employees of Wakefern and Saker ShopRites, Inc. ("Saker") (the "Saker Class," as hereinafter more fully defined). The "SRS Class" and the "Saker Class" are together referred to as the "State Law Classes."

**<u>JURISDICTION AND VENUE</u>**

3. This Court has jurisdiction over Plaintiff Alvarado's FLSA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

4. This Court has supplemental jurisdiction over both Plaintiffs' New Jersey Labor Law claims because those claims arise out of the exact same nucleus of facts and are so related to the FLSA claims as to form part of the same case or controversy. 28 U.S.C. § 1367.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because each of the Defendants, Wakefern Food Corp. ("Wakefern") and Saker ShopRites, Inc. ("Saker")

have their principal place of business and reside in this district, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred here.

**PARTIES**

6. Plaintiff Christian Alvarado is an individual and a resident of Clark, New Jersey. Plaintiff Alvarado was employed at SRS's ShopRite of Clark, New Jersey, store during the last three years until approximately October 2026. Plaintiff Alvarado's paychecks show that he was paid by SRS. Plaintiff Alvarado's "Consent to Join Lawsuit" is attached as Exhibit A hereto and is fully incorporated by reference herein.

7. Plaintiff Jenner is an individual and resident of Toms River, New Jersey. Plaintiff Jenner worked for Saker in its ShopRite, Manchester, New Jersey, store from June to August of 2025, and from January to June of 2026. Plaintiff Jenner's paychecks show that he was paid by Saker.

8. Defendant Wakefern is a New Jersey corporation with its headquarters and principal place of business at 5000 Riverside Drive, Keasbey, New Jersey, 08832. Defendant Wakefern is a cooperative consisting of approximately forty-five (45) members that own and operate more than 380 supermarkets located in New Jersey, New York, Connecticut, Pennsylvania, Delaware, Maryland, Massachusetts, New Hampshire, and Rhode Island.

9. Defendant SRS is a New Jersey corporation with its headquarters and principal place of business at 176 N. Main Street, Florida, New York 10921. It is a wholly-owned subsidiary of Wakefern and owns and operates approximately thirty-four (34) supermarkets in New Jersey, Pennsylvania and New York, including ShopRite of Clark, New Jersey.

10. Defendant Saker is a New Jersey corporation with its headquarters and principal place of business at 922 Highway 33, Building 6, Suite 1, Freehold, New Jersey 07728. It is the

largest cooperative member of Wakefern. Saker owns and operates approximately forty (40) ShopRite supermarkets in New Jersey (including ShopRite of Manchester, New Jersey) as well as other retail establishments.

## FACTUAL ALLEGATIONS

### Defendants' Business and Status as an Employer

11. Defendant Wakefern acts as the wholesale purchasing, distribution, and business support backbone for its cooperative members. As the largest retailer-owned supermarket cooperative in the United States, Wakefern pools resources for its approximately forty-five (45) member companies in order to allow its members to compete against massive national and multinational supermarket chains.

12. The services Wakefern provides its cooperative members include private label brand development, advertising support, category management, engineering/logistical services, store quality assurance and inspections, marketing and retail store development, and employee oversight and management, including the provision of timekeeping systems, payroll processing, and labor scheduling.

13. With regard to timekeeping and payroll, Wakefern centrally procured, licensed, hosted and maintained the Kronos workforce timekeeping system, used by all the members of its cooperative. Upon information and belief, Wakefern also has established, administers, and/or maintains standardized timekeeping configurations and practices for all of the supermarkets owned by each of its cooperative members, including the time rounding practices challenged in this action.

14. Wakefern's wholly owned subsidiary, SRS, and its largest independently owned cooperative member, Saker, both utilized this Wakefern standardized Kronos timekeeping system

that rounded employees' recorded working time in the same manner. Specifically, employees of both companies who clocked in within seven (7) minutes before their scheduled starting times and performed compensable work during those periods were not compensated for that time. Upon information and belief, these common practices resulted from timekeeping policies or system configurations established, administered, or maintained by Wakefern for its subsidiary and cooperative members.

15. Through its centralized timekeeping, payroll, and labor-management systems, Wakefern exercised control over material aspects of the terms and conditions of employment of employees of SRS and Saker, including the recording of their working time, the calculation of compensable hours, and the maintenance and processing of employment and payroll records. Upon information and belief, Wakefern exercised similar control with respect to employees of other members of its cooperative. Accordingly, Wakefern was a joint employer of Plaintiffs and similarly situated employees, together with SRS, Saker, and the other cooperative members that directly employed them, within the meaning of the FLSA and New Jersey State law and references herein to it will be in such capacity.

16. Defendants and the other members of the Wakefern cooperative utilize non-exempt employees, including Plaintiffs and the other members of the FLSA Collective and State Law Classes, in furtherance of their business purposes.

17. At all times relevant, each Defendant is an enterprise within the meaning of 29 U.S.C. § 203(r).

18. At all times relevant, each Defendant has operated as an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1)(A), in that each Defendant has had employees engaged in commerce or handling, selling,

or otherwise working on goods and materials that have moved in interstate commerce, and each Defendant has had an annual gross volume of sales made, or business done, of not less than $500,000.00.

**Plaintiffs', the FLSA Collective's, and State Law Classes' Non-Exempt Employment Statuses with Defendants**

19. Plaintiff Alvarado, during the last three years, worked at SRS's ShopRite in Clark, New Jersey until approximately October 2026 and was employed as a full-time hourly non-exempt employee. Plaintiff Alvarado's responsibilities included directing employees in the produce department to ensure tasks were completed, produce was rotated correctly, produce met company standards, and that employees took breaks and lunch at appropriate times. In 2024, Plaintiff Alvarado worked six days a week and usually worked a shift from approximately 11:00 p.m. to 7:30 a.m. In 2025 and 2026, Plaintiff Alvarado worked daytime shifts from 5:00 a.m. or 6:00 a.m. until 2:30 p.m. Throughout these periods, as further described below, in addition to his scheduled shift hours, Plaintiff Alvarado routinely clocked in and performed work before his scheduled shift start times and continued performing work after his scheduled shift end times before clocking out. Plaintiff Alvarado worked overtime hours for which he was not paid.

20. Plaintiff Jenner, during the last three years, worked at Saker's ShopRite located in Manchester, New Jersey, as an hourly non-exempt employee until approximately June 2026. Plaintiff Jenner initially worked as a clerk cashier and then as a self-checkout associate. He worked a fluctuating shift schedule, some days from 1:00 p.m. to 7:00 p.m. and other days from 6:00 p.m. to 11:00 p.m. Throughout these periods, as further described below, in addition to his scheduled shift hours, Plaintiff Jenner routinely clocked in and performed work before his scheduled shift start times and continued performing work after his scheduled shift end times before clocking out. Plaintiff Jenner worked hours for which he was not paid.

21. The other members of the FLSA Collective and of the State Law Classes were also classified and paid as hourly non-exempt employees.

22. At all times relevant, Plaintiffs and other members of the FLSA Collective and State Law Classes were employees within the meaning of 29 U.S.C. § 203(e) and New Jersey Labor Law.

23. At all times relevant, Plaintiffs and other members of the FLSA Collective and State Law Classes were employees engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 207.

**The Failure to Pay for All Hours Worked**
**as a Result of Defendants' Time Rounding Practices**

24. Plaintiffs and other members of the FLSA Collective and State Law Classes were, and are, required to clock in and out at the beginning and end of their shifts at Defendants' locations or those of other Wakefern cooperative members to record their hours worked. The system they clock into and out of is the Kronos system Defendant Wakefern has adopted and implemented cooperative-wide and subsidiary-wide.

25. Specifically, Plaintiff Jenner routinely clocked in up to seven (7) minutes prior to the scheduled start of his shifts – the earliest time Wakefern's timekeeping system permitted Saker's hourly employees to clock in during the relevant time period – and immediately began performing the principal activities of his job for the benefit of Defendant Saker. A sign was posted at clock-in indicating that employees could not clock in more than seven (7) minutes before their shift. Defendant Wakefern's centralized timekeeping system automatically rounded his clock-in time forward to his scheduled shift start time, erasing those compensable pre-shift minutes and depriving Plaintiff Jenner of straight-time compensation. Likewise, when he clocked out within

seven (7) minutes after his shift end, the system credited him only through the scheduled ending time, despite his having performed compensable work during the additional minutes.

26. Plaintiff Alvarado generally clocked in within seven (7) minutes before his shift and almost all of the time clocked out up to seven (7) minutes after his shift. He clocked in at a station that would not allow anyone to clock in more than seven (7) minutes before the start of a shift. No one ever told Plaintiff Alvarado not to clock out up to seven (7) minutes after his shift ended, but if he clocked out eight (8) minutes or more after his shift, the store manager would reprimand him about that since it would lead to overtime. Both before and after his shift, Plaintiff Alvarado performed his usual produce-department duties.

27. Plaintiffs' experiences were not unique; rather, the other members of the FLSA Collective and State Law Classes were subjected to the same uniform timekeeping and rounding policies. Like Plaintiffs, other members of the FLSA Collective and State Law Classes routinely clocked in up to seven (7) minutes prior to their scheduled shift start times and immediately began performing the principal, integral, and indispensable duties of their roles and routinely continued performing their principal job duties past their scheduled shift end times before clocking out. However, Defendants automatically rounded employees' pre-shift clock-ins forward to their scheduled shift start times and rounded their post-shift clock-outs down to their scheduled ending times. Consequently, compensable pre-shift and post-shift working time was systematically rounded away, resulting in the members of the FLSA Collective being deprived of required overtime compensation and members of the State Law Classes being deprived of straight time and overtime compensation.

28. Defendants' rounding policies did not operate neutrally in practice. Rather, pursuant to them, Plaintiffs and other members of the FLSA Collective and State Law Classes

were systematically prevented from receiving the benefit of rounding in their favor. Specifically, employees were prevented from clocking in more than seven (7) minutes before their scheduled shift start times and were subject to reprimand if they clocked out eight (8) minutes or more after their scheduled shift ending times. At the same time, employees were expected to be ready to work at their scheduled starting times and to complete their assigned duties before leaving work, even when doing so required them to perform compensable work during the periods that Defendants subsequently rounded away. Thus, Defendants' timekeeping and attendance rules operated together to ensure that employees routinely performed compensable work during periods for which they were not paid, while limiting their ability to benefit from the rounding system.

29. Defendants' rounding practices were not neutral, either in their design or in their operation over time, but instead systematically favored Defendants and resulted in their failure to compensate Plaintiffs and other members of the FLSA Collective and State Law Classes for all hours actually worked, in violation of the FLSA, 29 C.F.R. § 785.48(b), and the applicable provisions of the New Jersey Labor Law.

30. Defendants suffered or permitted Plaintiffs and members of the FLSA Collective and State Law Classes to perform compensable work before their scheduled starting times and after their scheduled ending times. Although Defendants knew or had reason to know that such work was being performed, they failed to compensate these employees for the time rounded away by their timekeeping systems. As a result, Plaintiff Alvarado and similarly situated employees were deprived of overtime compensation for hours worked in excess of forty (40) in a workweek, while Plaintiffs and members of the State Law Classes were deprived of straight-time and/or overtime compensation for compensable work performed during the rounded-away periods.

31. Although there was no administrative difficulty in compensating them for such work, both as to beginning and end of shifts, pursuant to Defendants' rounding policies, such time did not count as hours worked for purposes of computing their pay for overtime or non-overtime hours worked.

32. Defendants' time rounding and/or editing policies and practices are not and have not been neutral, facially or otherwise. Pursuant to them, Plaintiffs', the FLSA Collective's, and the State Law Classes' work starting and ending times were rounded, edited, and/or otherwise manipulated despite the use of a timekeeping system that tracks exactly when they "punched" or clocked in/out and started/ended working each day.

33. Defendants' rounding/editing and time manipulation practices, as implemented and in actual effect, have violated and continue to violate Department of Labor regulations which require both that employees' time be rounded "to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour" and that the method "will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked." 29 C.F.R. § 785.48(b).

34. As a result, Plaintiffs and the other members of the FLSA Collective and of the State Law Classes have not been able to benefit from Defendants' rounding system; instead, the rounding system has resulted in, over a period of time, the failure to pay Plaintiffs and the other members of the FLSA Collective and the State Law Classes for all hours worked, in violation of the FLSA, 29 C.F.R. § 785.48(b) and N.J.S.A. 34:11-56a4(b)(1).

35. The on-the-clock but unpaid time deprivation policies/practices, which apply to the employees of SRS and of Saker, and, upon information and belief, employees of all other members of Wakefern's cooperative, are the result of knowing or reckless executive decisions by

Defendants. Pursuant to the FLSA, 29 C.F.R. § 785.13, Defendants "cannot sit back and accept the benefits [of additional work completed by their employees] without compensating for them." "Management has the power to … [and] must make every effort to" ensure all work completed at the beginning and end of shifts was paid in accordance with the FLSA and state law. *See id.*

**<u>Defendants' Record Keeping Violations</u>**

36. The FLSA required Defendants to maintain accurate and complete records of employees' time worked and amounts earned and paid. 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.2, 516.5, 516.6, 516.7.

37. Specifically, federal regulations require employers to make and keep payroll records showing information and data such as the employee's name, occupation, time of day and day of week on which the workweek begins, regular hourly rate of pay for any week in which overtime compensation is due, hours worked each workday and total hours worked each workweek, total daily or weekly straight time earnings, total premium pay for overtime hours, total wages paid each pay period and date of payment and pay period covered by the payment. 29 C.F.R. § 516.2.

38. Similarly, the New Jersey Wage Payment Law, N.J.S.A. 34:11-4.6, requires employers with ten or more employees to provide wage statements identifying, among other things, gross wages, net wages, the rate of pay, and, if relevant to the wage calculation, the number of hours worked during the pay period.

39. Defendants kept records of hours worked by Plaintiffs and members of the FLSA Collective and the State Law Classes. However, at the time that the hours worked by Plaintiffs and members of the FLSA Collective and the State Law Classes were transmitted to payroll for compensation purposes, Defendants' timekeeping and time rounding system was willfully and

intentionally designed to transmit post-edited, rounded, modified, and inaccurate and/or incomplete records which do not include pre- and post-shift compensable work required by, performed for, and to the benefit of Defendants and the other members of Wakefern's cooperative, which had the direct effect of reducing their labor costs to the detriment of Plaintiffs and the members of the FLSA Collective and the State Law Classes. Thus, Defendants' time and rounding system did not properly record and pay all hours worked in violation of the FLSA's and the New Jersey Labor Law's record keeping requirements.

**<u>The Willfulness of Defendants' Violations</u>**

40. By denying Plaintiffs and members of the FLSA Collective and the State Law Classes compensation for time to which they were entitled, as has been discussed above, the use of the rounding policies by Defendants was not based upon good faith.

41. The pay practices of SRS, Saker, and the other members of the Wakefern cooperative resulted from systematic and company and cooperative wide policies, including at the corporate level of Defendant Wakefern. Defendants, including Wakefern, are sophisticated organizations with both in-house and outside legal counsel. Through counsel as well as industry experience and custom, Defendants possessed ample access to the regulations and statutory provisions requiring the proper and prompt payment of overtime compensation under federal laws recited in this Complaint, but either failed to seek out such information and guidance or did seek out the information and guidance but failed to adhere to the principles of compliance as required. Defendants therefore knew about the overtime compensation requirements of federal law or acted in reckless disregard as to Defendants' obligations under these laws.

42. Defendants' overtime compensation payment and general wage compensation payment obligations were clearly known by Defendants, but nonetheless willfully and

intentionally disregarded. By way of example and as indicia of knowledge, federal law requires employers to post, and keep posted, a notice explaining the overtime provisions of the FLSA in a conspicuous place in all of their establishments so as to permit employees to readily read it, which includes the language that the employer must pay overtime pay as required by the FLSA. [1] Upon information and belief, Defendants posted the notices required to be posted under the FLSA which contain language outlining the FLSA's compensation requirements.

43. Defendants' policies and practices with respect to time editing and time rounding, as followed by the other Defendants and other members of the Wakefern cooperative, thus resulted from knowing or reckless executive decisions. Pursuant to the FLSA, 29 C.F.R. § 785.13, an employer "cannot sit back and accept the benefits [of additional work completed by employees] without compensating for them. … Management has the power to … [and] must make every effort to" ensure all work completed before, and after, shifts was paid in accordance with the FLSA and state law. *See id.*

44. By virtue of the time rounding function employed by Defendants and the other entities within the cooperative, Defendants had reason to know that this time rounding and editing policy caused employees to do work for which they were not paid.

45. Because Defendants' time and labor management policies did not include any prohibition against work during these rounded periods, they are liable for compensating Plaintiffs and other members of the FLSA Collective and the State Law Classes for this time. Defendants' actions were thus deliberate and willful within the meaning of the FLSA, and Defendants lacked a good faith basis for their actions. Defendants knew about the overtime compensation

---

[1] https://www.dol.gov/sites/dolgov/files/WHD/legacy/files/minwagep.pdf (last accessed Nov. 23, 2026).

requirements of the FLSA and of the New Jersey Labor Law and acted in reckless disregard as to their obligations thereunder.

46. Accordingly, the failure to compensate Plaintiffs and the other members of the FLSA Collective and the State Law Classes for hours worked in excess of forty (40) hours per week at "one and one-half times" the employees' "regular rate[s]" of pay constitutes a willful violation of the FLSA, 29 U.S.C. § 207 and of New Jersey Labor Law N.J.S.A. 34:11-56a1, *et seq.* and N.J.S.A. 34:11-4.1, *et seq.*

47. Plaintiff Alvarado and the members of the FLSA Collective are entitled to liquidated damages equal to their unpaid overtime compensation under 29 U.S.C. § 216(b). Plaintiffs and the members of the State Law Classes are also entitled to liquidated damages in an amount up to 200% of their unpaid wages under the applicable provisions of the New Jersey Labor Law, without duplicative recovery.

## FLSA COLLECTIVE OVERTIME ALLEGATIONS
## (As to COUNT ONE)

48. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 47, as if fully rewritten herein.

49. Plaintiff Alvarado brings this case on behalf of a group of employees (the "FLSA Collective") who assert claims under the overtime provisions of the FLSA in this case by filing consents to join this action from this group of individuals:

> All current and former non-exempt employees of Defendants during the three years preceding the commencement of this action through the date of judgment, who worked overtime hours during one or more applicable workweek periods, and whose recorded working time was subject to Defendants' time rounding and/or editing policies and practices, and who assert claims for unpaid overtime compensation under the FLSA.[2]

[2] Plaintiff Alvarado reserves the right to amend and refine the definition of the FLSA Collective based upon further investigation and discovery.

50. Such persons are "similarly situated" with respect to the alleged FLSA violations, in that all were non-exempt employees who were subjected to and injured by Defendants' unlawful rounding/editing and time manipulation policies by which they were not paid overtime compensation for all hours worked in excess of forty (40) per workweek, and all have the same claims for unpaid overtime compensation as well as for liquidated damages, attorneys' fees, and costs.

51. Plaintiff Alvarado and other members of the FLSA Collective are similarly situated because, among other reasons, they are owed overtime from working hours for which they were not paid overtime compensation as a result of Defendants' time rounding and/or editing policies, and time manipulation practices in conformity with these policies, that lead to less time paid than time worked. Plaintiff Alvarado will prosecute this action vigorously on behalf of the members of the FLSA Collective.

52. Plaintiff Alvarado and other members of the FLSA Collective have been damaged by the willful refusal to pay at least the federal overtime wage for all overtime hours worked due to Defendants' time rounding and/or editing policies. As a result of these willful FLSA violations, Plaintiff Alvarado and other members of the FLSA Collective are similarly situated in that each is entitled to damages, including, but not limited to, unpaid wages, liquidated damages, costs, and attorneys' fees.

53. Plaintiff Alvarado is entitled to send notice to all potential FLSA Collective members pursuant to Section 216(b) of the FLSA. Upon information and belief, the precise size and identity of the group of potential FLSA Collective members are readily ascertainable from the payroll records, timekeeping records, and/or employee and personnel records in the possession of Defendants and that Defendants have been required to maintain, pursuant to the FLSA. Plaintiff

Alvarado cannot yet state the exact number of similarly-situated persons but avers, upon information and belief, that the group of potential FLSA Collective members consists of more than one thousand persons.

**STATE LAW ALLEGATIONS**
**(As to COUNTS TWO, THREE, and FOUR)**

54. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 47, as if fully rewritten herein.

55. Plaintiffs bring their claims under the New Jersey Labor Law as a class action pursuant to Fed. R. Civ. P. 23. Plaintiff Alvarado brings these claims on behalf of himself and a class of similarly situated current and former New Jersey employees of SRS (the “SRS Class”), and Plaintiff Jenner brings these claims on behalf of himself and a class of similarly situated current and former New Jersey employees of Saker (the “Saker Class”). More specifically, these claims of the SRS Class are brought against Defendants Wakefern and SRS on behalf of a class defined as:

> All current and former hourly, non-exempt employees of ShopRite Supermarkets, Inc., who worked in New Jersey during the six years preceding the commencement of this action through the date of judgment, whose recorded working time was subject to the time-rounding and/or editing practices challenged in this action, and who were not compensated for all overtime and/or straight-time hours worked.[3]

The claims of the Saker Class are brought against Defendants Wakefern and Saker on behalf of a class defined as:

> All current and former hourly, non-exempt employees of Saker ShopRites, Inc., who worked in New Jersey during the six years preceding the commencement of this action through the date of judgment, whose recorded working time was subject

[3] Plaintiff Alvarado reserves the right to amend and refine the definition of the SRS Class based upon further investigation and discovery.

to the time-rounding and/or editing practices challenged in this action, and who were not compensated for all overtime and/or straight-time hours worked.[4]

56. There are questions of law or fact common to the State Law Classes, including but not limited to:

(a) Whether Defendants denied Plaintiffs and other members of the State Law Classes earned and owed compensation where, among other things, these employees were not paid wages for their hours worked;

(b) Whether Defendants' denial of Plaintiffs' and the other members of the State Law Classes' earned and owed compensation violated the NJWPL and/or the NJWHL;

(c) Whether Defendants failed to pay Plaintiffs and the State Law Classes overtime compensation for all hours worked in excess of forty (40) hours in a workweek in violation of the NJWHL or straight time for all non-overtime hours in violation of the NJWPL;

(d) Whether Defendants' violations of the NJWHL and/or NJWPL were knowing or reckless and not the result of inadvertent, good-faith error;

(e) Whether Defendants failed to provide accurate paystubs under N.J.S.A. 34:11-4.6;

(f) What amount of monetary relief will compensate Plaintiffs and other members of the State Law Classes for Defendants' failure to pay straight-time and/or overtime compensation owed when the wages were required to be paid.

57. Plaintiff Alvarado's and Plaintiff Jenner's claims are typical of the claims of other members of the respective State Law Classes. Plaintiffs' claims arise out of the same uniform course of conduct by the respective Defendants, and are based on the same legal theories, as the claims of the other members of the State Law Classes.

58. The State Law Classes, described above, are both so numerous that joinder of all members is impracticable. Plaintiffs cannot yet state the exact number of class members in each class but aver, upon information and belief, that the State Law Classes each consist of one thousand or more persons. The number of class members, as well as their identities, are ascertainable from

---

[4] Plaintiff Jenner reserves the right to amend and refine the definition of the Saker Class based upon further investigation and discovery.

the payroll and personnel records Defendants have maintained, and were required to maintain, pursuant to the FLSA and the New Jersey Labor Law, as set forth above.

59. Plaintiffs will fairly and adequately protect the interests of the State Law Classes. Neither Plaintiff has interests antagonistic to those of the members of their respective class; rather, their interests are aligned. Plaintiffs' counsel have broad experience in handling class action litigation, including wage-and-hour litigation, and are fully qualified to prosecute the claims of the State Law Classes in this case.

60. The questions of law or fact that are common to the State Law Classes predominate over any questions affecting only individual members. These common questions will determine Defendants' liability to the respective State Law Classes.

61. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Requiring class members to pursue their claims individually would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on court resources. Many class members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually. Certification of this case as a class action pursuant to Fed. R. Civ. P. 23 will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

## COUNT ONE
**(FLSA Overtime Violations)**
***On Behalf of Plaintiff Alvarado and the FLSA Collective***
***Against All Defendants***

62. Plaintiff Alvarado incorporates by reference the foregoing allegations of paragraphs 1 through 53, as if fully rewritten herein.

63. At all relevant times, Defendants have been, and continue to be, employers engaged in interstate commerce or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 207(a).

64. Defendants have engaged in a pattern and practice of violating the FLSA, as described in this Complaint.

65. Plaintiff Alvarado has consented in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b).

66. The overtime wage provisions set forth in 29 U.S.C. § 201, *et seq.,* apply to Defendants.

67. At all relevant times, Defendants utilized time-rounding and/or editing policies and practices that resulted in the failure to pay Plaintiff Alvarado and members of the FLSA Collective all overtime compensation owed for hours worked in excess of forty (40) hours per workweek.

68. As a result of their willful failure to compensate Plaintiff and the FLSA Collective members, at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty (40) hours in a workweek, Defendants have violated, and continue to violate, the FLSA, 29 U.S.C. § 201, *et seq.,* including 29 U.S.C. §§ 207(a)(1) and 215(a).

69. As a result of Defendants' willful failure to record, report, credit, and compensate their employees, including Plaintiff Alvarado and the FLSA Collective members, each Defendant has failed to make, keep, and preserve records with respect to each of their employees sufficient to determine the wages, hours, and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. § 201, *et seq.,* including 29 U.S.C. §§ 211(c) and 215(a).

70. As a result of Defendants' practice of rounding and editing time records in order to process payroll at a rate less than what is owed to their employees, Defendants knew or recklessly

disregarded the fact that Plaintiff Alvarado and the FLSA Collective members were entitled to proper overtime pay and acted with and/or showed reckless disregard that their conduct was prohibited by the FLSA. 29 U.S.C. § 255(a).

71. As a result of Defendants' FLSA violations, Plaintiff Alvarado and the members of the FLSA Collective are entitled to recover from the Defendants responsible for their unpaid overtime compensation: (a) unpaid overtime wages for all compensable hours worked in excess of forty (40) hours per workweek; (b) an additional, equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b) and (c) reasonable attorneys' fees, and costs and disbursements of this action.

72. Defendants' violations of the FLSA have been willful within the meaning of that statute, and thus a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

## COUNT TWO
**(Failure to Pay Overtime Wages Under the NJWHL)**
***On Behalf of Plaintiff Alvarado and the SRS Class Against Wakefern and SRS***

73. Plaintiff Alvarado incorporates by reference the foregoing allegations of paragraphs 1 through 47, and paragraphs 54 through 61, as if fully rewritten herein.

74. At all relevant times, Defendants Wakefern and SRS have been "employers" within the meaning of, and subject to the requirements of, the NJWHL. *See* N.J.S.A. 34:11-56a1(g).

75. At all relevant times, Defendants Wakefern and SRS each employed Plaintiff Alvarado and the members of the SRS Class as "employees" within the meaning of the NJWHL. *See* N.J.S.A. 34:11-56a1(h).

76. Section 34:11-56a4 of the NJWHL requires employers, like Defendants, to pay employees, like Plaintiff Alvarado and the SRS Class members, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked in excess of forty (40) hours in a workweek. *See* N.J.S.A. 34:11-56a4(b)(1).

77. By virtue of Wakefern's and SRS's use of the rounding policies alleged, they have violated and are continuing to violate the NJWHL by failing to pay Plaintiff Alvarado and the SRS Class overtime wages (at the proper premium rate based on all remuneration received) for all hours worked in excess of forty (40) hours in a workweek, as provided by N.J.S.A. 34:11-56a4(b)(1).

78. Plaintiff Alvarado and the SRS Class members have been harmed as a direct and proximate result of Defendants' unlawful conduct because they have been deprived of wages owed for work that they performed and from which their employer derived a direct and substantial benefit.

79. Defendants knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Plaintiff Alvarado and the members of the SRS Class premium overtime compensation for all overtime hours worked.

80. Defendants' failure to pay Plaintiff Alvarado and the members of the SRS Class overtime compensation at the proper premium rate for all overtime hours worked was neither reasonable, nor was the decision not to pay these employees overtime compensation at the proper premium rate for all overtime hours worked made in good faith.

81. Accordingly, Plaintiff Alvarado and the members of the SRS Class are entitled to recover their unpaid overtime wages in an amount equal to 1.5 times their regular hourly rates of pay, liquidated damages in an amount up to 200% of their unpaid wages, and attorney's fees and costs. *See* N.J.S.A. 34:11-56a25.

## COUNT THREE
## (Failure to Pay Earned Wages Under the New Jersey Wage Payment Law)
***On Behalf of Plaintiffs and the State Law Classes***

82. Plaintiffs incorporate by reference the foregoing foregoing allegations of paragraphs 1 through 47, and paragraphs 54 through 61, as if fully rewritten herein.

83. Defendants' conduct alleged above violates the NJWPL, N.J.S.A. 34:11-4.1, *et seq.*, including N.J.S.A. 34:11-4.2.

84. At all relevant times, Defendants have been "employers" within the meaning of, and subject to the requirements of, the NJWPL. *See* N.J.S.A. 34:11-4.1(a).

85. At all relevant times, Defendants employed Plaintiffs and the members of the State Law Classes as "employees" within the meaning of the NJWPL. *See* N.J.S.A. 34:11-4.1(b).

86. Defendants Wakefern and SRS were each directly or jointly responsible for the payment of wages earned by Plaintiff Alvarado and the members of the SRS Class, and Defendants Wakefern and Saker were each directly or jointly responsible for the payment of wages earned by Plaintiff Jenner and the members of the Saker Class. Each Defendant failed to pay the employees for whom it was responsible all wages earned and due, as alleged herein.

87. The NJWPL requires employers, like Defendants, to pay employees, like Plaintiffs and the members of the State Law Classes, all wages (including overtime wages and non-overtime wages) earned, due, and owing to them on their regular payday. *See* N.J.S.A. 34:11-4.2.

88. During the course of their respective employments, Defendants agreed to pay Plaintiffs and the members of the State Law Classes "wages" – within the meaning of the NJWPL, *see* N.J.S.A. 34:11-4.1(c) – including hourly rates for all hours they worked up to and including forty (40) hours in a workweek, as well as overtime rates for all hours they worked in excess of forty (40) hours in a workweek.

89. But during the course of their employment, Defendants failed to pay Plaintiffs and the members of the State Law Classes wages earned for all time they worked at the rates Defendants agreed to pay them.

90. As a result of Defendants' illegal automatic rounding policy, Plaintiffs and the members of the State Law Classes have been deprived of all wages earned, due, and owed to them.

91. The wages Defendants owe to Plaintiffs and the members of the State Law Classes remain unpaid.

92. Defendants knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Plaintiffs and the members of the State Law Classes all wages earned for all hours worked.

93. Defendants' failure to pay Plaintiffs and the members of the State Law Classes all wages at the rates due them was neither reasonable, nor was the decision not to pay these employees all wages owed made in good faith.

94. Accordingly, Plaintiffs and the members of the State Law Classes are entitled to recover their unpaid "straight time" and overtime wages, plus liquidated damages in an amount up to 200% of their unpaid wages, and attorney's fees and costs. *See* N.J.S.A. 34:11-4.10(c).

**COUNT FOUR**
**(Failure to Provide Accurate Wage Statements Under N.J.S.A. 34:11-4.6)**
***On Behalf of Plaintiffs and the State Law Classes***

95. Plaintiffs incorporate by reference the foregoing foregoing allegations of paragraphs 1 through 47, and paragraphs 54 through 61, as if fully rewritten herein.

96. At all relevant times, Defendants have been "employers" within the meaning of, and subject to the requirements of, the NJWPL. *See* N.J.S.A. 34:11-4.1(a).

97. At all relevant times, Defendants employed Plaintiffs and the members of the State Law Classes as "employees" within the meaning of the NJWPL. *See* N.J.S.A. 34:11-4.1(b).

98. Defendants Wakefern and SRS were each directly or jointly responsible for maintaining accurate wage and payroll records and providing required wage statements to Plaintiff

Alvarado and the members of the SRS Class, and Defendants Wakefern and Saker were each directly or jointly responsible for maintaining accurate wage and payroll records and providing required wage statements to Plaintiff Jenner and the members of the Saker Class.

99. The NJWPL requires employers, like Defendants, to provide employees, like Plaintiffs and the members of the State Law Classes, with a statement of deductions from wages for each pay period and, for employers with ten or more employees, a statement identifying, among other things, gross wages, net wages, the rate of pay, and, if relevant to the wage calculation, the number of hours worked during the pay period. *See* N.J.S.A. 34:11-4.6(c).

100. Defendants kept records of hours worked by Plaintiffs and the members of the State Law Classes. However, at the time that the hours worked by Plaintiffs and members of the State Law Classes were transmitted to payroll for compensation purposes, pursuant to Defendants' rounding policy, Defendants willfully and intentionally transmitted post-edited, rounded, modified, and inaccurate and/or incomplete records which did not include pre- and post-shift compensable work required by, performed for, and to the benefit of Defendants, which had the direct effect of reducing Defendants' labor costs to the detriment of Plaintiffs and members of the State Law Classes.

101. As a result of Defendants' unlawful automatic rounding and/or editing practices, Plaintiffs and the members of the State Law Classes were provided wage statements that failed to accurately reflect the number of hours they actually worked during the applicable pay periods and the gross wages earned for those hours, in violation of N.J.S.A. 34:11-4.6(c)(1) and (4).

102. Defendants knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to provide accurate paystubs to Plaintiffs and the members of the State Law Classes reflecting all hours worked, and consequently failed to pay for all hours worked.

103. Defendants' failure to provide Plaintiffs and the members of the State Law Classes with accurate wage statements reflecting the hours actually worked and gross wages earned, as required by N.J.S.A. 34:11-4.6, was neither reasonable nor undertaken in good faith, but instead resulted from Defendants' knowing and willful implementation of the timekeeping, rounding, and payroll practices alleged herein.

104. Accordingly, Plaintiffs and the members of the State Law Classes seek all relief available under the NJWPL for Defendants' violations of N.J.S.A. 34:11-4.6(c), including applicable statutory remedies, reasonable attorneys' fees, and costs, without duplicative recovery of damages sought under the preceding counts.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and other members of the FLSA Collective and State Law Classes, as applicable, pray that this Honorable Court:

A. Promptly order Defendants to provide all relevant policies and procedures regarding timekeeping and compensation, as well as all payroll, timekeeping, time rounding, time editing, and other relevant records, necessary to determine similarly situated individuals;

B. Promptly order Defendants to provide all contact information, including but not limited to names, dates of employment, addresses, telephone numbers, and email addresses, of similarly situated individuals;

C. Conditionally certify the putative FLSA Collective and provide Court-approved notice to similarly-situated persons informing them of this action and their ability to opt-in and become part of the FLSA Collective and enabling them to opt in;

D. Toll the statute of limitations for all members of the FLSA Collective, from the date that this matter was initially filed until the date on which they file consents to join;

E. Certify this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of Plaintiffs and the members of the State Law Classes;

F. Enter judgment against Defendants, and in favor of Plaintiffs, the FLSA Collective, and the members of the State Law Classes, declaring that Defendants' activities, as alleged herein, violate the FLSA and the New Jersey Labor Law and enjoining Defendants from continuing to violate the New Jersey Labor Law, as well as awarding the relief set forth immediately below;

G. Award compensatory damages to Plaintiff Alvarado and the members of the FLSA Collective pursuant to 29 U.S.C. § 216(b) in the amount of their unpaid overtime wages, as well as liquidated damages in an equal amount;

H. Award Plaintiffs and the members of the State Law Classes all damages allowed by the New Jersey Labor Law, including but not limited to all unpaid "straight time" and overtime wages, liquidated damages in an amount up to 200% of their unpaid wages, and all other penalty damages available;

I. Designate Plaintiff Alvarado as the representative of the SRS Class and Plaintiff Jenner as the representative of the Saker Class, and counsel of record as Class Counsel for the State Law Classes;

J. Award Plaintiffs, and members of the FLSA Collective, and the State Law Classes, prejudgment interest, post-judgment interest, costs, and attorneys' fees incurred in prosecuting this action, expert fees, as well as statutory and/or punitive damages and an award of damages representing Defendants' employers' share of FICA, FUTA, state unemployment insurance, and any other required employment taxes; and

K. Enter such other and further relief as this Court deems equitable, just, and proper.

Date: November 23, 2026

Respectfully submitted,

*s/ Seth R. Lesser*

Seth R. Lesser
Christopher M. Timmel*
**KLAFTER LESSER LLP**
Two International Drive, Suite 350
Rye Brook, NY 10573
Telephone: (914) 934-9200
seth@klafterlesser.com
christopher.timmel@klafterlesser.com

Ryan A. Winters *
Kevin M. McDermott II *
**SCOTT & WINTERS LAW FIRM, LLC**
Telephone: (216) 912-2221

11925 Pearl Rd., Suite 310
Strongsville, Ohio 44136
rwinters@ohiowagelawyers.com
kmcdermott@ohiowagelawyers.com

Peter N. Wasylyk*
**LAW OFFICES OF PETER N. WASYLYK**
1307 Chalkstone Avenue
Providence, RI 02908
Telephone: (401) 831-7730
Email: pnwlaw@aol.com

*ATTORNEYS FOR PLAINTIFFS, FLSA COLLECTIVE ACTION PLAINTIFF, AND PROPOSED RULE 23 CLASS COUNSEL*

* PROCEEDING *PRO HAC VICE* OR TO BE FILED

**CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2**

I, Seth R. Lesser, hereby certify pursuant to Local Civil Rule 11.2 and 28 U.S.C. § 1746 that, to the best of my knowledge, information, and belief, the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

I certify under penalty of perjury that the foregoing is true and correct.

Executed on: November 23, 2026

*s/ Seth R. Lesser*
Seth R. Lesser